IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Bradley Johnston; Sandra Johnston; | ) | Case No. 8:23-cv-01417-JDA |
| Randall Johnston, Jr.; Michael L. | ) | |
| Abernathy; Clyde E. Abernathy; Linda | ) | |
| M. Abernathy; William DeWitt Crompton; | ) | |
| Dianna Rene Crompton; Susan E. | ) | |
| Davis; Wayne G. Davis; William | ) | |
| Benjamin Duncan; James Brian Duncan; | ) | |
| W. Richard Ellison, Jr.; Peggy S. | ) | |
| Ellison; Alton Ray Ellison; Dana Stone; | ) | |
| Timothy Martin; Jennifer Martin; | ) | |
| Gregory Nichols; Margaret Nichols; Billy | ) | **OPINION AND ORDER** |
| Raines; Shirley Raines; Benjamin F. | ) | |
| Signor; Marilyn R. Signor; Brandon | ) | |
| Casey Sokol; Allison Parris Sokol; John | ) | |
| Larry Williams; Sylvia E. Williams; | ) | |
| Jason Wyant; Denise Wyant, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Anderson Regional Landfill, LLC; | ) | |
| Waste Connections of South Carolina, | ) | |
| Inc., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| Carolyn Cooley; Clyde Cooley; | ) | Case No. 8:23-cv-01418-JDA |
| Elizabeth Cooley; Danny R. Cooley; | ) | |
| Alice F. Cooley; Jay H. Cooley; | ) | |
| Nicholas Cooley; Shantuesday Cooley; | ) | |
| Patrick Cooley; Cassandra Cooley; | ) | |
| Melissa DeVall; Connie Douglas; | ) | |
| Veronica Denise Gambrell; Joan E. | ) | |
| Heatherly; Sharon Cooley Jackson; | ) | |
| Grace Elizabeth Tesner; Herman Webb; | ) | |
| Latasha Webb; Luddie Woods; | ) | |

Gwendolyn Woods,           )
                                     )
              Plaintiffs,    )
                                     )
         v.                )
                                     )
Anderson Regional Landfill, LLC;    )
Waste Connections of South Carolina,    )
Inc.,                     )
                                     )
              Defendants.[1]   )
_____ )

These two related actions are before the Court on motions to dismiss filed by Anderson Regional Landfill, LLC ("ARL") and Waste Connections of South Carolina, Inc. ("WCSC") (collectively, "Defendants"). Plaintiffs' claims in these actions are based on the alleged acts and omissions of Defendants in the operation of Anderson Regional Landfill (the "Landfill") and its alleged release of noxious odors and solid waste onto Plaintiffs' nearby properties.

Plaintiffs commenced these actions by filing identical Complaints in the Anderson County Court of Common Pleas on February 15, 2023, against ARL and Waste Connections, Inc. [*Johnston* Doc. 1-1; *Cooley* Doc. 1-1.] ARL removed the actions to this Court on April 7, 2023. [*Johnston* Doc. 1; *Cooley* Doc. 1.] Plaintiffs filed nearly identical Amended Complaints on May 12, 2023, removing Waste Connections, Inc. and adding WCSC as a defendant. [*Johnston* Doc. 22; *Cooley* Doc. 22.]

On June 9, 2023, ARL filed identical motions to dismiss Plaintiffs' Amended Complaints in each case for failure to state a claim. [*Johnston* Doc. 33; *Cooley* Doc. 35.]

---

[1] This caption represents the parties currently involved in this litigation.

Plaintiffs filed identical responses in each case [*Johnston* Doc. 43; *Cooley* Doc. 45], to which ARL filed identical replies [*Johnston* Doc. 44; *Cooley* Doc. 46]. On June 27, 2023, WCSC also filed identical motions to dismiss Plaintiffs' Amended Complaints. [*Johnston* Doc. 39; *Cooley* Doc. 41.] Plaintiffs filed identical responses in each case [*Johnston* Doc. 48; *Cooley* Doc. 50], to which WCSC filed identical replies [*Johnston* Doc. 49; *Cooley* Doc. 51]. Accordingly, each of Defendants' motions to dismiss is now ripe for review.

## **BACKGROUND**

Plaintiffs are citizens and residents of Anderson County, South Carolina, who "own property and reside in close proximity" to the Landfill. [*Johnston* Doc. 22 ¶ 1; *Cooley* Doc. 22 ¶ 1.] The Landfill, allegedly owned and operated by both Defendants, is a regional landfill facility located in the community where Plaintiffs reside. [*Johnston* Doc. 22 ¶ 24 *Cooley* Doc. 22 ¶ 25.] The location or identity of such community is unclear from the pleadings.

In 2020, Defendants petitioned the South Carolina Department of Health and Environmental Control ("SCDHEC") to increase the Landfill's permit to accept an additional tonnage of waste, which was approved. [*Johnston* Doc. 22 ¶¶ 15–17; *Cooley* Doc. 22 ¶¶ 15–17.] Since accepting the additional waste, Defendants have allegedly "caused and allowed, and continue to cause and allow, pollution, terrible, noxious, and unpleasant odors, fumes, gases including methane gas, trash, particulate matter, and dust, often nauseating, stifling and unbearable, to emanate from the Landfill onto the real estate owned by Plaintiffs." [*Johnston* Doc. 22 ¶ 19; *Cooley* Doc. 22 ¶ 20.] Plaintiffs allege that Defendants have also caused and allowed trash, hazardous waste, soiled

3

diapers, and other solid waste to physically intrude onto Plaintiffs' properties. [*Johnston* Doc. 22 ¶ 20; *Cooley* Doc. 22 ¶ 21.] The *Cooley* plaintiffs further allege that all traffic entering the Landfill does so via the road where they reside, which increases the amount of trash, debris, waste (discarded or escaped en route), along with excessive noise and high traffic usage, to the detriment of those plaintiffs.[2] [*Cooley* Doc. 22 ¶ 19.]

Plaintiffs' Amended Complaints state that the above problems on Plaintiffs' properties have been "caused by Defendants' failure to obey applicable laws, regulations, and permits, failure to install proper technology, failure to utilize appropriate operational practices, attempting to handle more waste than they are capable of handling, and Defendants' unreasonable use of their property in this community." [*Johnston* Doc. 22 ¶ 21; *Cooley* Doc. 22 ¶ 22.] More specifically, Plaintiffs allege that Defendants have violated the following statutes and regulations:

      (a)    South Carolina Code Ann. § 44-96-330, which requires owners and operators of municipal solid waste landfills to control disease vectors, fires, odors, blowing litter, and scavenging, to access controls to protect human health and safety and the environment, and provides that they shall not…pose a hazard to human health or environment.

      (b)    South Carolina R. 61-107.19, Part V:

            (i)    Subpart C, requiring the owners and operators to control vectors, fires, odors, blowing litter and

---

[2] This additional allegation is the only substantive difference between the two Amended Complaints.

scavenging, and to operate without presenting a threat to human health or the environment.

(ii)  Subpart H, requiring owners and operators to ensure that gas generated at the facility will not create a hazard to health, safety or property.

(iii)  Subpart I, requiring owners and operators to have adequate landfill gas control measures in place…to control the migration of methane and to control the presence of any odors…

(iv)  Subpart J, requiring owners and operators to act in the best interest of human health and safety and the environment, and to ensure the protection of human health and safety and the environment.

(c)  40 CFR Part 258.21, requiring owners and operators to control disease vectors, fires, odors, blowing litter, and scavenging, and to operate without presenting a threat to human health and the environment, and to be protective of human health and the environment.

[*Johnston* Doc. 22 ¶ 21 (alterations in original) (internal quotation marks omitted); *Cooley* Doc. 22 ¶ 22 (alterations in original) (internal quotation marks omitted).]

Plaintiffs claim that Defendants' actions have damaged and injured them as follows:

(a)  in causing their entire properties to be extremely unpleasant and frequently unbearable;

(b)  in interfering with the use and enjoyment of their residences and properties;

(c)  in interfering with daily activities and outdoor activities and decreasing the quality of life;

(d)  in causing extremely unpleasant temporary symptoms such as headaches, nausea, coughing, choking, irritation to membranes, and mental distress;

(e)  in causing annoyance, discomfort, inconvenience, loss

of enjoyment of life and quality of life.

(f)     in causing interference with mental tranquility and causing emotional distress;

(g)     in causing a reduction of value of their properties and the loss of fair rental value of their properties; and

(h)     in causing any other damages allowed by law.

[*Johnston* Doc. 22 ¶ 22; *Cooley* Doc. 22 ¶ 23.]

Based on these facts, Plaintiffs assert the following causes of action: (1) nuisance, (2) trespass, (3) negligence/gross negligence/recklessness/negligence per se. [*Johnston* Doc. 22 ¶¶ 29–44; *Cooley* Doc. 22 ¶¶ 30–45.] Plaintiffs seek injunctive relief,[3] actual and punitive damages, and attorneys' fees and costs. [*Johnston* Doc. 22 at 12; *Cooley* Doc. 22 at 12.]

## APPLICABLE LAW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd.*

---

[3] Plaintiffs' fourth cause of action is for "Injunction and Restraining Order." [Johnston Doc. 22 ¶¶ 45–50; Cooley Doc. 22 ¶¶ 46–51.] Defendants have argued that this is not a proper cause of action, but instead a request for relief. [*Johnston* Doc. 33-1 at 30; *Cooley* Doc. 35-1 at 30–31.] The Court agrees and will treat it as such.

6

*P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference.  *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985).  If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## DISCUSSION

**Defendants' Motions to Dismiss**[4]

Defendants argue that the Court should dismiss the Amended Complaints because Plaintiffs have not pled facts to support the required elements of their causes of action,

---

[4] The first motions to dismiss the Amended Complaints were filed by ARL on June 9, 2023, arguing that Plaintiffs have not pled facts to support the required elements of their causes of action. [*Johnston* Doc. 33-1; *Cooley* Doc. 35-1.] WCSC filed its motions to dismiss the Amended Complaints on June 17, 2023, joining in ARL's motions to dismiss and additionally arguing that WCSC was incorrectly named as a defendant. [*Johnston* Doc. 39-1 at 2 n.1, 17–18; *Cooley* Doc. 41-1 at 2 n. 1, 17–18.] For ease of reference, the Court will cite to ARL's motions to dismiss because they contain the majority of the arguments addressing Plaintiffs' causes of action.

as required by *Twombly* and *Iqbal*.  [*Johnston* Doc. 33-1 at 12–29; *Cooley* Doc. 35-1 at 12–30.]  The Court agrees.

### *Nuisance*

Defendants argue that Plaintiffs' nuisance claims should be dismissed because the Amended Complaints do not show the individual, unique harms that would allow dozens of private causes of action for public nuisance.[5]  [*Johnston* Doc. 33-1 at 23–29; *Cooley* Doc. 35-1 at 24–30.]

Plaintiffs allege that "Defendants' actions constitute an unreasonable and unnatural use of Defendants' property so as to substantially impair the use and enjoyment of Plaintiffs' properties," thereby creating a nuisance.  [*Johnston* Doc. 22 ¶ 30; *Cooley* Doc. 22 ¶ 31.]  Plaintiffs allege throughout the Amended Complaints that Defendants' actions have caused damages not only to Plaintiffs but to others in the community. [*Johnston* Doc. 22 ¶¶ 25, 27, 39, 46–48; *Cooley* Doc. 22 ¶¶ 26, 28, 40, 47–49.]

South Carolina courts recognize two types of nuisance claims—public and private. "A public nuisance exists wherever acts or conditions are subversive of public order, decency, or morals, or constitute an obstruction of public rights.  Such nuisances always arise out of unlawful acts." *State v. Turner*, 18 S.E.2d 372, 375 (S.C. 1942) (internal quotation marks omitted).  In general, a private citizen cannot bring a suit to abate a public

---

[5] Defendants primarily argue that Plaintiffs' nuisance claims can be construed only as public nuisance claims, which fail because Plaintiffs are private litigants, and Plaintiffs argue in their responses to ARL's motions to dismiss that they allege private claims for public nuisance.  [*Johnston* Docs. 33-1 at 23–25; 43 at 10–11; *Cooley* Docs. 35-1 at 24–25; 45 at 11–12.]  For the purposes of this Order, the Court will treat Plaintiffs' nuisance claims as private claims for a public nuisance.

nuisance but must rely upon the state to do so.  *Huggin v. Gaffney Dev. Co.*, 92 S.E.2d 883, 884 (S.C. 1956).  However, a narrow exception to this rule provides that if a private citizen alleges "direct and special damages resulting to him, different in kind from what the public may sustain," he may bring a private claim to abate a public nuisance.  *Id*. (internal quotation marks omitted).  As the court in *Huggin* explained, the special injury alleged must be "different in kind and not merely in degree from that suffered by the public at large." *Id*.  In South Carolina, actions of nuisance are "limited to one's interest in property, rather than providing any protection to one's person." *Babb v. Lee Cnty. Landfill SC, LLC*, 747 S.E.2d 468, 472 (S.C. 2013).  Thus, the special injury requirement "necessary for an individual to maintain a cause of action for public nuisance is satisfied only by injury to the individual's real or personal property." *Overcash v. S.C. Elec. & Gas Co.*, 614 S.E.2d 619, 622 (S.C. 2005).

The Court finds that neither the *Johnston* Plaintiffs nor the *Cooley* Plaintiffs have sufficiently pled an injury to their real or personal property that is different in kind from that suffered by the entire community.  In fact, most of the language in the Amended Complaints focuses on the harm to the community, not to the individual plaintiffs. [*Johnston* Doc. 22 ¶¶ 25, 27, 39, 46–48; *Cooley* Doc. 22 ¶¶ 26, 28, 40, 47–49.]  For example, both Amended Complaints allege that "Defendants, knowing the damages and injuries caused and continuing to be caused to Plaintiffs *and other community members*, continue to maintain their operations in such a manner as to continue to cause and allow said problems to occur." [*Johnston* Doc. 22 ¶ 27 (emphasis added); *Cooley* Doc. 22 ¶ 28 (emphasis added).]  Plaintiffs further allege that Defendants have caused and allowed

"excessive amounts of methane gas to escape from their property and to invade *the community, including Plaintiffs' properties*" [*Johnston* Doc. 22 ¶ 39(b) (emphasis added); *Cooley* Doc. 22 ¶ 40(b) (emphasis added)] and that "[i]f Defendants continue to cause such problems to Plaintiffs *and other community members*, Plaintiffs will be irrevocably harmed" [*Johnston* Doc. 22 ¶ 47 (emphasis added); *Cooley* Doc. 22 ¶ 48 (emphasis added)].

Instead of distinguishing the injuries to their real or personal property from the injuries of every other person living in the surrounding community, Plaintiffs merely include conclusory allegations that Defendants' actions have interfered with their "use and enjoyment" of their properties.   [*Johnston* Doc. 22 ¶ 30; *Cooley* Doc. 22 ¶ 31.]   The Supreme Court of South Carolina explained in *Babb* that to allow plaintiffs "to recover for annoyance and discomfort to their person as a component of trespass or nuisance damages, as opposed to related to their property interests, would be to unhinge nuisance from the traditional property locus and transform them into personal injury causes of action." 747 S.E.2d at 474.  Plaintiffs have not alleged any actual property damage caused by Defendants.  Even the *Cooley* Plaintiffs' allegation that traffic on the road leading to the Landfill has caused "trash, debris, and waste (discarded or escaped en route), along with the excessive noise and high traffic usage" [*Cooley* Doc. 22 ¶ 19] is insufficient to allege special injury because it does not allege that the problems caused by the increased traffic are unique to the *Cooley* Plaintiffs, nor does it allege that Defendants own, operate, or control all of the vehicles traveling on that road.

11

Further, although Plaintiffs allege that they have suffered special damages because they live in close proximity to the Landfill [*Johnston* Doc. 22 ¶ 22; *Cooley* Doc. 22 ¶ 23], the injuries they allege are at most different in degree from the rest of the community, not different in kind.  That difference in degree is not enough to constitute nuisance under South Carolina law.  *See Lecroy v. CSX Transp., Inc.*, No. 2:14-cv-2128-RMG, 2014 WL 11046154, at *4 (D.S.C. Jan. 17, 2014) (dismissing the plaintiffs' nuisance claim, reasoning that the plaintiffs, who lived in close proximity to the bridge at issue, were of course, impacted to a larger degree than others who might use the bridge, but they had not alleged facts showing that their inconvenience was actually of a special character, distinct and different from any other person who might use the bridge); *see also Winley v. Int'l Paper Co.*, No. 2:09-cv-2030-CWH, 2012 WL 13047989, at *8 (D.S.C. Oct. 23, 2012) (dismissing the plaintiffs' nuisance claims and holding that "proximity to the Facility may establish a difference in degree of injury, but it does not establish an injury different in kind from that suffered by the general public").

Plaintiffs have failed to plead a direct and special injury to their real or personal property that differs in kind from that suffered by the entire community.  Accordingly, Defendants' motions to dismiss are granted with respect to Plaintiffs' nuisance claims.

### *Trespass*

Defendants also argue that Plaintiffs' trespass claims should be dismissed because Plaintiffs fail to allege the requisite intent and physical invasion necessary to support a trespass claim.  [*Johnston* Doc. 33-1 at 12–18; *Cooley* Doc. 35-1 at 12–19.]

Plaintiffs allege that Defendants have committed actionable trespass by "causing and allowing pollution, horrific and noxious fumes, odors, gases including methane gas, trash, dust, and particulate matter" as well as "trash, hazardous waste, and other physical waste" to escape from the Landfill and invade Plaintiffs' properties. [*Johnston* Doc. 22 ¶¶ 34–35; *Cooley* Doc. 22 ¶¶ 35–36.] The *Cooley* plaintiffs additionally allege that Defendants caused and allowed "trash, debris, [and] waste" to be discarded on the road upon which Plaintiffs reside because of increased traffic on the road leading to the Landfill. [*Cooley* Doc. 22 ¶ 19.]

In South Carolina, "[t]respass is any intentional invasion of the plaintiff's interest in the exclusive possession of his property." *West v. Newberry Elec. Coop.*, 593 S.E.2d 500, 503 (S.C. Ct. App. 2004) (internal quotation marks omitted). To state a claim for trespass, a plaintiff must allege facts showing three elements—that the defendant took "an affirmative act," that "the invasion of the land [was] intentional," and that "the harm caused [was] the direct result of that invasion." *Snow v. City of Columbia*, 409 S.E.2d 797, 802 (S.C. Ct. App. 1991).

First, Plaintiffs have not sufficiently alleged an "invasion of land" as to their claims of pollution, noxious fumes and odors, and gases, because odors cannot give rise to a trespass claim. The Supreme Court of South Carolina in *Babb* directly addressed this issue. *See* 747 S.E.2d at 476. In *Babb*, this Court certified five questions to the Supreme Court in an environmental tort action brought by community members against a landfill in their neighborhood. *Id*. at 471–72. One of the certified questions was whether "South Carolina law recognize[s] a cause of action for trespass solely from invisible odors rather

13

than physical invasion such as dust or water." *Id.* The Court held that "South Carolina adheres to the traditional rule requiring an invasion by a physical, tangible thing for a trespass to exist, and accordingly, held that odors cannot give rise to a trespass claim." *Id.* at 476. Therefore, Plaintiffs cannot maintain a trespass claim for noxious odors or any other intangible elements.

Plaintiffs argue that their allegations of trash, hazardous waste, soiled diapers, and other solid waste deposited on their property should save their trespass claims. [*Johnston* Doc. 43 at 7–8; *Cooley* Doc. 45 at 8.] However, these too fail to state a claim because Plaintiffs have not pled any facts to show how these releases occurred, when they occurred, or the specific amounts of each type of tangible material that was allegedly released by Defendants and deposited on the real property. *See, e.g., Winley*, 2012 WL 13047989, at *6 (holding that plaintiffs' causes of action for trespass failed under *Twombly* and *Iqbal* because the complaints did "not plead any facts to show how these alleged releases occurred, or when they occurred, or the specific amounts of each type of particulate that was released by the defendant and deposited on the real property, or the specific type, or amount, of damages suffered by each plaintiff to their persons and real property").

Defendants additionally argue that Plaintiffs have not sufficiently alleged that the invasion of Plaintiffs' property was intentional. [*Johnston* Doc. 33-1 at 11–14; *Cooley* Doc. 35-1 at 11–14.] "Intent is proved by showing that the defendant acted voluntarily and that he knew or should have known the result would follow from his act." *Snow*, 409 S.E.2d at 802. "Although neither deliberation, purpose, motive, nor malice are necessary

elements of intent, the defendant must intend the act which in law constitutes the invasion of the plaintiff's right." *Id*. "Trespass is an intentional tort; and while the trespasser, to be liable, need not intend or expect the damaging consequence of his entry, he must intend the act which constitutes the unwarranted entry on another's land." *Id.*

Plaintiffs have alleged Defendants are aware of the problems caused by the Landfill because they have received "numerous complaints from other residents and property owners of this area for a number of years." [*Johnston* Doc. 22 ¶ 25; *Cooley* Doc. 22 ¶ 26.] However, the Amended Complaints fail to allege what types of complaints were lodged and by whom, and also do not show what intentional actions were taken by Defendants to cause these alleged invasions.

Mere negligence cannot constitute actionable trespass. *See Snow*, 409 S.E.2d at 802. In *Snow*, the plaintiffs brought a claim for trespass based on a discharge of water onto their land resulting from defendant's leaking pipe joint. *Id* at 798. The trial court granted a directed verdict in favor of the plaintiffs on the claim. *Id*. On appeal, the South Carolina Court of Appeals noted that the evidence demonstrated that the defendant did not intentionally discharge the water and was not aware of it until it was brought to their attention. *Id* at 802. The Court concluded:

> At best, the evidence showed the leak resulted from the [defendant]'s inadvertent failure to keep its water main in good operating condition. Since the event which constituted the entry was not a voluntary act of the [defendant], an action for trespass will not lie. To hold otherwise on the facts before us would effectively impose strict liability under the guise of trespass to land.

*Id*. at 802–03.

Here, Plaintiffs have not alleged any facts showing that Defendants intentionally or voluntarily caused the release of trash and other waste onto Plaintiffs' properties. Other than allegations providing that Defendants lawfully petitioned for and accepted additional tonnage to the Landfill, Plaintiffs cannot point to any specific intentional acts by Defendants that caused trash and other solid materials to be released and deposited onto their properties. [*Johnston* Doc. 22 ¶¶ 15–18; *Cooley* Doc. 22 ¶¶ 15–18.] At most, Plaintiffs have alleged that Defendants "allowed" release of materials or that the materials "escaped" from the Landfill. [*See, e.g.*, *Johnston* Doc. 22 ¶¶ 19–21, 26–27, 34–35, 39; *Cooley* Doc. 22 ¶¶ 20–22, 27–28, 35–36, 40.] Plaintiffs allege that Defendants have "fail[ed] to install proper technology," have "fail[ed] to utilize appropriate operational practices," and "continue to maintain their operations in such a manner as to continue to cause and allow said problems to occur." [*Johnston* Doc. 22 ¶¶ 21, 27; *Cooley* Doc. 22 ¶¶ 22, 28.] These conclusory allegations of negligence are insufficient to state a trespass claim under South Carolina law.

For all of these reasons, Plaintiffs have failed to state their trespass claims. Accordingly, Defendants' motions to dismiss are granted with respect to Plaintiffs' trespass claims.

### Negligence/Gross Negligence/Recklessness/Negligence Per Se

Finally, Defendants argue that Plaintiffs' negligence claims should be dismissed because Plaintiffs have not met federal pleading standards to allege how Defendants acted negligently. [*Johnston* Doc. 33-1 at 18–21; *Cooley* Doc. 35-1 at 19–22.] Defendants further argue that Plaintiffs' negligence per se theory does not salvage their

16

negligence claims because Plaintiffs have failed to state with any specificity a statutorily created private right of action.  [*Johnston* Doc. 33-1 at 22; *Cooley* Doc. 35-1 at 22-23.]

Negligence/Gross Negligence/Recklessness

For their negligence claims, Plaintiffs allege that, in addition to other purportedly negligent actions, Defendants have been "negligent, grossly negligent, reckless, careless, wanton and willful" in causing and allowing "pollution, noxious fumes, odors, dust, gases including methane gas, particulate matter, and trash" to escape from their property and invade Plaintiffs' properties. [*Johnston* Doc. 22 ¶ 39; *Cooley* Doc. 22 ¶¶ 40.] Plaintiffs allege that Defendants owe Plaintiffs "a duty of reasonable care" and a "duty to follow the law . . . and other related rules as they apply to Defendants' operation of the landfill" [*Johnston* Doc. 22 ¶¶ 40–41; *Cooley* Doc. 22 ¶¶ 41–42], and that Defendants have breached this duty by failing to "utilize and employ" proper operating procedures and proper technology and systems to prevent and control such problems, and by attempting to "handle more waste intake than [they] can reasonably handle" [*Johnston* Doc. 22 ¶ 39(a), (c), (e); *Cooley* Doc. 22 ¶ 40(a), (c), (e)].  The Amended Complaints further allege that Plaintiffs, as a group, have suffered "extremely unpleasant temporary symptoms such as headaches, nausea, coughing, choking, irritation to membranes, and mental distress," and that Defendants' actions have "interfere[ed] with the use and enjoyment of [Plaintiffs'] residence and properties" and have caused "reduction of value

of their properties and the loss of fair rental value of their properties." [*Johnston* Doc. 22 ¶ 22(b), (d), (g); *Cooley* Doc. 22 ¶ 23(b), (d), (g).]

To establish a cause of action for negligence, "a plaintiff must prove the following four elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty." *Thomasko v. Poole*, 561 S.E.2d 597, 599 (S.C. 2002).

Defendants contend that the Amended Complaints do not state a claim of negligence because they do not allege facts sufficient to establish a breach of duty, causation, and damages. [*Johnston* Doc. 33-1 at 18–21; *Cooley* Doc. 35-1 at 19–22.] The Court disagrees. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678. As stated above, Plaintiffs allege that Defendants owe Plaintiffs "a duty of reasonable care" and a "duty to follow the law . . . and other related rules as they apply to Defendants' operation of the landfill." [*Johnston* Doc. 22 ¶¶ 40–41; *Cooley* Doc. 22 ¶¶ 41–42.] Plaintiffs allege that Defendants have been negligent, grossly negligent, and reckless in a number of specific ways, including failing to utilize proper operating procedures and technology and attempting to handle more waste than they can handle. [*Johnston* Doc. 22 ¶ 39(a), (c), (e); *Cooley* Doc. 22 ¶ 40(a), (c), (e)]. Plaintiffs also allege a series of specific medical issues caused by Defendants' alleged actions, as well as damage to their property. [*Johnston* Doc. 22 ¶ 22(b), (d), (g); *Cooley* Doc. 22 ¶ 23(b), (d), (g).] The Court finds that these allegations are sufficient to

18

state a claim for negligence, gross negligence, and recklessness at this stage of litigation. Therefore, the Court denies Defendants' motions to dismiss as to negligence, gross negligence, and recklessness.

<u>Negligence Per Se</u>

Plaintiffs also plead claims of negligence per se against Defendants, alleging that Defendants "violat[ed] various state and federal regulations and statutes as well as permit conditions relating to odor control, daily ground cover, dust control, methane gas and others, constituting negligence *per se*." [*Johnston* Doc. 22 ¶ 39(i); *Cooley* Doc. 22 ¶ 40(i).]

To state a claim for negligence per se under South Carolina law, a plaintiff must establish facts showing two elements: (1) that the defendant owes the plaintiff a duty of care deriving from a statute and (2) that the defendant violated the statute and therefore failed to exercise due care. *Whitlaw v. Kroger Co.*, 410 S.E.2d 251, 252–53 (S.C. 1991) (per curiam); *Rayfield v. S.C. Dep't of Corrs.*, 374 S.E.2d 910, 914–15 (S.C. Ct. App. 1988). The first element requires the plaintiff to establish both "(1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that [the plaintiff] is a member of the class of persons the statute is intended to protect." *Whitlaw*, 410 S.E.2d at 252 (internal quotation marks omitted).

As a threshold matter, an allegation of negligence per se requires the violation of a statute or regulation. Defendants argue that Plaintiffs have failed to "state with any specificity which regulations, statutes, or permit conditions were violated." [*Johnston* Doc. 33-1 at 22; *Cooley* Doc. 35-1 at 22.] This is not accurate. Plaintiffs identify three statutes or regulations that they contend Defendants violated: South Carolina Code Ann. § 44-96-

330, South Carolina R. 61-107.19, Part V; and 40 C.F.R. Part 258.21. S.C. Code Ann. § 44-96-240(B)(2); S.C. Code Regs. § 61-107.19; 40 C.F.R. § 258.21.  However, Plaintiffs do not allege that the purpose of any of these statutes is to protect from the kind of harm they have suffered, nor that they are members of the class the statute is intended to protect.

In South Carolina, for a statute to support a claim for negligence per se, a plaintiff must show that the statute was "enacted for the special benefit of a private party." *Doe v. Marion*, 645 S.E.2d 245, 248 (S.C. 2007).  If a statute is "concerned with the protection of the public and not with the protection of an individual's private right," it cannot support a private cause of action for negligence per se.  *Id*. at 249.

The Court concludes that the statutes cited by Plaintiffs in their Amended Complaints are designed to protect the general public and were not "enacted for the special benefit of a private party." *Id*. at 248.   For example, Plaintiffs contend that Defendants violated the South Carolina Solid Waste Policy and Management Act (the "Act"), South Carolina Code Ann. § 44-96-330.  [*Johnston* Doc. 22 ¶ 21; *Cooley* Doc. 22 ¶ 22.]  The language of the Act, however, states that the purpose is to "protect[] human health and safety and the environment." S.C. Code Ann. § 44-96-240(B)(2).  Likewise, South Carolina R. 61-107.19, Part V provides throughout that the purpose of the solid waste management regulations as to Class Three landfills is to protect "public health." S.C. Code Regs. § 61-107.19.  And, one of 40 C.F.R. Part 258.21's goals is to "be protective of human health and the environment." 40 C.F.R. § 258.21.  These statutes and regulations, all enacted to protect the general public, do not support a cause of action

for negligence per se brought by an individual to vindicate a private right and none contain language creating a private right of action.

Therefore, Defendants' motions to dismiss are granted with respect to Plaintiffs' claims for negligence per se.

**WCSC's Motions to Dismiss**

Defendant WCSC also moves to dismiss Plaintiffs' Amended Complaints on the ground that WCSC is not a proper party to the cases. [*Johnston* Doc. 39; *Cooley* Doc. 41.] WCSC argues that it neither owns nor operates the Landfill, has no corporate relationship with ARL, and does not control activities at the Landfill. [*Id.*; *see also* Docs. 39-1; 41-1.] However, Plaintiffs allege that WCSC is involved in a joint venture with ARL to own, operate, and manage facilities such as the Landfill. [*Johnston* Doc. 22 ¶ 8; *Cooley* Doc. 22 ¶ 8.] Plaintiffs allege that WCSC operates the website https://wasteconnectionsofthecarolinas.com/, on which WCSC advertises "Disposal Services" at the "Anderson Regional Landfill" and includes pictures of the Landfill, a map showing its location, and a picture of the sign at the Landfill, which includes the name for Waste Connections, Inc.[6] and its logo. [*Johnston* Doc. 22 ¶¶ 10–11; Cooley Doc. 22 ¶¶ 10–11.] The Court finds that Plaintiffs' allegations are sufficient at this stage of litigation to state that WCSC is a proper defendant and therefore denies WCSC's motion

---

[6] Plaintiffs' original Complaints named Waste Connections, Inc. as a defendant. [*Johnston* Doc. 1-1; *Cooley* Doc. 1-1.] Waste Connections, Inc. moved to dismiss the Complaints for lack of jurisdiction, arguing that it was not a proper party to the case. [*Johnston* Doc. 9; *Cooley* Doc. 10.] Plaintiffs amended their Complaints and replaced Waste Connections, Inc. with WCSC as a defendant. [*Johnston* Doc. 22; *Cooley* Doc. 22.]

to dismiss on these grounds.  *See*, *e.g.*, *Parker v. Stirling*, No. 5:19-cv-00938-TLW-KDW, 2020 WL 8513795 (denying Defendants' motion to dismiss "[a]t this early stage in litigation," because "the undersigned finds Plaintiff has met minimum pleading requirements to survive initial dismissal of his Amended Complaint because he has articulated enough facts to establish a plausible claim for relief against these defendants").

## CONCLUSION

Wherefore, based upon the foregoing, Anderson Regional Landfill's motions to dismiss [*Johnston* Doc. 33; *Cooley* Doc. 35] are GRANTED with respect to Plaintiffs' claims for nuisance, trespass, and negligence per se, and DENIED with respect to Plaintiffs' claims for negligence, gross negligence, and recklessness.  Waste Connections of South Carolina, Inc.'s motions to dismiss [*Johnston* Doc. 39; *Cooley* Doc. 41] are GRANTED with respect to Plaintiffs' claims for nuisance, trespass, and negligence per se, and DENIED with respect to WCSC's argument that it is not a proper party.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

March 25, 2024
Greenville, South Carolina